IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SAMUEL CURDO** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 24-132** |
| | : | |
| **COUNTY OF CHESTER,** | : | |
| **PRIMECARE MEDICAL, INC.,** | : | |
| **JACLYN CASEY, GABRIELLA** | : | |
| **CHECCI, KAREN MURPHY, DR.** | : | |
| **MARTIN ZARKOSKI** | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                  **February 21, 2024**

      The Commonwealth detains Samuel Curdo at the Chester County prison while he awaits trial in state court. Mr. Curdo claims severe dental pain and a dental infection while in custody. He pro se sued the County and its contracted medical providers PrimeCare Medical, Inc., two PrimeCare Medical physician assistants Jaclyn Casey and Gabriella Checchi, PrimeCare Medical administrator Karen Murphy, and PrimeCare dentist Dr. Martin Zarkoski alleging they denied him dental care in violation of the Fourteenth Amendment. He now asks for a mandatory injunction compelling the state actors arrange for extraction of his tooth or provide cavity treatment denied to him. We reviewed the medical records and sworn statements. Mr. Curdo claims to have grieved his claims but the County denies having a record of grievances. The contracted medical providers continue to treat his conditions including twice since he filed suit. He cannot show immediate harm as his claims challenge past conduct; the records confirm present treatment. He also has not shown the deliberate indifference necessary to obtain a narrow mandatory injunction compelling state actors to provide additional medical care. We deny his motion for immediate injunctive relief.

I. **Alleged pro se facts**

Mr. Curdo has suffered dental pain for more than three months in the Chester County Prison during which time PrimeCare Medical is obligated to provide him dental care.[1]

### *PrimeCare Medical dentist Dr. Zarkoski evaluated Mr. Curdo in August 2023 and found no decay.*

Mr. Curdo's medical record confirms his August 17, 2023 Sick Call Request for "Dentist to check my gums."[2] PrimeCare Medical nurse Ashley Lawson signed the Sick Call Request form noting Mr. Curdo would be seen by dentist Dr. Zarkoski.[3]

Mr. Curdo submitted a Sick Call Request form the next day asking to be seen by a dentist to have his "teeth cleaned and checked. My gums hurt too."[4] PrimeCare responded the same day advising Mr. Curdo "you are scheduled to see the dentist" and the word "medical" on the signature line.[5] Administrator Murphy swears the August 18, 2023 Sick Call Request form is not contained in Mr. Curdo's medical record and PrimeCare nursing staff are trained to sign their name when responding to a Sick Call Request form and are ***not*** trained to sign "medical" on the signature line.[6]

The medical record reflects Dr. Zarkoski examined Mr. Curdo one week later on August 24, 2023.[7] Dr. Zarkoski found no apparent decay present and periodontal tissue appeared within normal limits.[8] Dr. Zarkoski noted an "aphthous ulcer" in the "buccal fold" around tooth number fifteen.[9] Dr. Zarkoski told Mr. Curdo the ulcer will resolve on its own in ten to fourteen days.[10] There is no record of Dr. Zarkoski seeing Mr. Curdo for dental treatment after August 24, 2023.

### *Mr. Curdo submitted a Sick Call Request in September 2023.*

Mr. Curdo submitted a Sick Call Request form on September 25, 2023 asking to be seen by a dentist because he "ha[d] a very painful sore in [his] lip in the front of [his] mouth" and "was wondering if the den[t]ist can call [him] down."[11] Nurse Lawson created a task from Mr. Curdo to

be examined by medical staff on September 23, 2023, but Prison security could not provide an escort to transport Mr. Curdo to the medical department.[12]

### Mr. Curdo submitted a Sick Call Request regarding ear pain in November 2023.

Mr. Curdo next submitted a Sick Call Request on November 13, 2023 complaining about severe ear pain in his right ear and a lump behind the ear.[13] Mr. Curdo noted "[t]his is the second time it has been hurting and this is worse than the first time. …"[14] The complaint continues to the reverse side of the form but Mr. Curdo does not provide us with it. The form is not signed or dated by a PrimeCare provider.[15]

### Mr. Curdo claims to having submitted a grievance on December 3, 2023.

Mr. Curdo attaches a copy of a Chester County Prison Official Inmate Grievance Form dated December 3, 2023.[16] Mr. Curdo complained: "Why has Karen Murphy and Dr. Martin Zarkoski ignore me and my dental issues. I have been suffering from a cavity but ignored for months as I'm told I need to wait until my release of custody. My inmate request slips and sick calls are ignored and my mail sometimes goes missing since I've begun trying to get help. This is my second attempt. Please help," signed by Mr. Curdo.[17]

No state actor signed or dated the grievance. Administrator Murphy swears she reviewed the PrimeCare Medical chart for Mr. Curdo and found no inmate grievances concerning dental care and is not aware of a grievance concerning dental care filed by Mr. Curdo at the Prison.[18]

### Mr. Curdo claims he submitted a Sick Call Request on December 19, 2023.

Mr. Curdo submitted a Sick Call Request form dated December 19, 2023.[19] Mr. Curdo complained he "ha[s] a severe pain in my left side of mouth[.] I've sent multiple sick calls and grievances please help."[20] Administrator Murphy swears the Sick Call Request form dated

3

December 19, 2023 is not contained in Mr. Curdo's medical record nor signed by a PrimeCare staff member.[21]

### *The medical providers twice evaluate Mr. Curdo in January 2024.*

Mr. Curdo submitted a Sick Call Request form on January 24, 2024 asking to be seen by a dentist because "my teeth hurt."[22] Nurse Marlayna Groat evaluated Mr. Curdo on January 25, 2024.[23] Mr. Curdo reported difficulty chewing and eating "certain foods" but Nurse Groat could not determine the cause of the problem, scheduled Mr. Curdo to be seen by a dentist, and provided Mr. Curdo with ibuprofen.[24]

Dentist Dr. David Kneal examined Mr. Curdo four days later.[25] Mr. Curdo reported pain in the upper left side of his mouth in a "general area" present "mostly when eating" but Dr. Kneal noted he could not "visibly see a[n] issue and patient does not know what is causing the pain [upper left] side."[26] Dr. Kneal found Mr. Curdo with "possible caries" and "possible pulpitis."[27] Dr. Kneal prescribed Mr. Curdo an antibiotic and explained to Mr. Curdo "we may need to try another [prescription] and/or ext[raction] at his request if/when needed."[28] The PrimeCare Defendants assert Mr. Curdo failed to comply with the prescribed treatment, refusing five of the six doses of antibiotic and pain medication in the mornings since prescribed.[29]

### *The County disputes Mr. Curdo grieved his dental care.*

Defendant Karen Murphy, RN, the Health Services Administrator for PrimeCare Medical, Inc. who is responsible for responding to inmate grievances concerning medical care swears:

- She reviewed Mr. Curdo's medical chart and found no grievances filed by him concerning dental care;[30]

- She is unaware of Mr. Curdo submitting a grievance(s) concerning his dental care at the Chester County Prison;

- The Sick Call Request forms regarding dental care attached to Mr. Curdo's Motion for preliminary injunction are not contained in his medical chart; and,

4

- PrimeCare nursing staff are trained to sign their name when responding to a Sick Call Request form and not the word "medical" as reflected in one of the Sick Call Request forms attached to Mr. Curdo's Motion for preliminary injunction.[31]

## II. Analysis

Mr. Curdo sued the County and PrimeCare Medical Defendants on January 8, 2024 alleging, as a pre-trial detainee, a Fourteenth Amendment deliberate indifference to his serious medical condition.[32] Mr. Curdo alleged he has cavities, and infection, and severe pain with swelling for months without treatment.[33] He seeks $1.65 million in damages, including punitive damages, and injunctive relief requesting we order Defendants "instruction on giving treatment for serious medical needs without delay, and to fix any and all non-medical customs stop[p]ing required medical care and protect the health of plaintiff [sic]."[34]

Mr. Curdo moved for a preliminary injunction and temporary restraining order ten days later seeking "dental treatment needed to prevent and correct the serious injury and pain [he] and others alike are being subject to be given remedy [sic]."[35] The County and PrimeCare Medical Defendants oppose Mr. Curdo's motion for injunctive relief.[36] Mr. Curdo did not reply to the County's and PrimeCare Medical's opposition.

The Supreme Court, through Federal Rule of Civil Procedure 65, details the procedures governing injunctions and restraining orders.[37]

Mr. Curdo seeks mandatory injunctive relief. A preliminary injunction is "mandatory," rather than "prohibitory," when the relief sought will alter the status quo by commanding a positive act.[38] Injunctive relief is an "extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."[39] To obtain a preliminary injunction, Mr. Curdo as the moving party must show: (1) a reasonable probability of success on

5

the merits; (2) irreparable harm if the relief sought is not granted; (3) whether relief would result in greater harm to the non-moving party; and (4) whether relief is in the public interest.[40] Our Court of Appeals instructs the first two factors are "gateway factors," prerequisites the moving party must first establish before the court "determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief."[41] The County and PrimeCare Medical Defendants argue Mr. Curdo cannot meet the two gateway factors.

Petitioners seeking a mandatory injunction bear a "particularly heavy" burden to show a substantial likelihood of success on the merits and the right to relief is "indisputably clear."[42] Under the Prison Litigation Reform Act, we may not, "in any civil action" seeking prospective relief "with respect to prison conditions," grant "any prospective relief unless [we] find[] that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."[43] We "shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."[44] We are directed by our Court of Appeals to make "needs—narrowness—intrusiveness findings" before awarding prospective relief.[45]

Mr. Curdo has not shown a basis for extraordinary mandatory injunctive relief. Mr. Curdo does not meet his heavy burden for a mandatory injunction challenging prison conditions further constrained by the Prison Litigation Reform Act. He cannot demonstrate irreparable harm and an "indisputably clear" substantial likelihood of success on the merits.

### A.  Mr. Curdo cannot demonstrate irreparable harm.

The PrimeCare Medical Defendants and the County argue Mr. Curdo cannot demonstrate irreparable harm because he received adequate dental care including evaluations and medications. And he continues to receive care since moving for injunctive relief. We agree.

Irreparable harm must be "actual and imminent, not merely speculative."[46] Mr. Curdo must make a clear showing of immediate irreparable harm.[47] Nurse Groat and Dr. Kneal examined Mr. Curdo twice after he filed his complaint and moved for injunctive relief. Dr. Kneal is treating Mr. Curdo with antibiotic and has a plan to monitor Mr. Curdo's dental condition.

To the extent Mr. Curdo complains of past harm—for example, in the September to December 2023 time frame—as a result of the alleged delay or denial of dental care, he may seek monetary relief through his complaint.[48] Past injury is not a basis for injunctive relief.[49] Our Court of Appeals expressed the maxim as a standing issue; where a plaintiff seeks "backward-looking" retrospective relief in the form of money damages, standing may be established through evidence of past injury.[50] Where a plaintiff seeks "forward-looking" prospective relief in the form of an injunction or declaratory judgment, he must show he is "likely to suffer *future* injury" which must also be "'imminent,' meaning that it is 'certainly impending' rather than just merely 'possible.'"[51]

Mr. Curdo cannot show irreparable harm; the County and PrimeCare are currently providing him dental care. He cannot obtain an Order compelling conduct already provided by the state actors.

**B. Mr. Curdo cannot demonstrate likelihood of success on the merits.**

Mr. Curdo must also demonstrate he "can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that [he] is more likely than not to suffer irreparable harm in the absence of preliminary relief."[52] The PrimeCare Medical Defendants and the County argue there is little likelihood of success on the merits because Mr. Curdo failed to exhaust the prison's grievance system before filing suit, there is no deliberate indifference to Mr. Curdo's medical care, he is not suffering from a serious medical condition, and he received dental care.

For largely the same reasons we find no irreparable harm, we find Mr. Curdo cannot show a likelihood of success on the merits because the County and PrimeCare Medical Defendants provided Mr. Curdo with treatment and cannot be "deliberately indifferent" to a serious medical need.

Mr. Crudo is a pre-trial detainee and we construe his deliberate indifference claim in violation of the Due Process Clause of the Fourteenth Amendment. The Fourteenth Amendment "affords pretrial detainees protections at least as great as the Eighth Amendment" and we accordingly review the merits of Mr. Curdo's claim for the denial of medical care under the Fourteenth Amendment by applying the standard used to evaluate claims under the Eighth Amendment.[53]

To establish a violation of a constitutional right to medical care, Mr. Curdo must show (1) a serious medical need, and (2) acts or omissions by prison officials indicating a deliberate indifference to the need.[54] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention."[55] Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law," requiring a prison official to "be aware of facts from which the inference could be drawn of a substantial risk and that the individual actually draws that inference."[56] Our Court of Appeals finds deliberate indifference where "objective evidence of a serious need for care is ignored and where 'necessary medical treatment is delayed for non-medical reasons.'"[57]

The record shows Mr. Curdo received dental care from a dentist on two separate occasions, including once after he moved for injunctive relief and is currently being treated with antibiotic and pain medication for possible tooth decay and possible pulpitis (inflammation of dental pulp)

8

of one of his teeth. The state actors provided treatment which, as of three weeks ago, is being addressed with antibiotic and pain medication. Mr. Curdo cannot show a deliberate indifference to his dental needs in violation of his Eighth Amendment rights.

### III. Conclusion

Pretrial detainee Samuel Curdo asks we order the Facility and its medical provider to immediately provide better dental care for his dental pain. He seeks mandatory injunctive relief. But he does not demonstrate immediate irreparable harm as the medical records confirm ongoing treatment, he does not appear to have grieved his claims, and has not demonstrated deliberate indifference to his medical care.

---

[1] ECF No. 8 at 7.

[2] ECF No. 22–2 at 2.

[3] *Id.*

[4] ECF No. 8 at 2.

[5] *Id.*

[6] ECF No. 22–1, ¶¶ 8–11.

[7] ECF No. 22–2 at 4.

[8] *Id.* at 9.

[9] *Id.* An aphthous ulcer is also known as a canker sore, defined as "small, shallow lesions that develop on the soft tissues in your mouth or at the base of your gums." https://www.mayoclinic.org/diseases-conditions/canker-sore/symptoms-causes/syc-20370615. "Buccal" means "pertaining to or directed toward the cheek. In dental anatomy, used to refer to the buccal surface of a tooth." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 253 (33rd ed. 2020).

[10] ECF No. 22–2 at 9.

[11] *Id.* at 3.

---

[12] *Id.* at 4–5.

[13] ECF No. 8 at 1.

[14] *Id.*

[15] *Id.*

[16] *Id.* at 18.

[17] *Id.*

[18] ECF No. 22–1 at 2, ¶¶ 5, 6.

[19] ECF No. 8 at 3.

[20] *Id.*

[21] ECF No. 22–1 at 3, ¶¶ 7, 8, 12.

[22] ECF No. 22–2 at 6.

[23] *Id.* at 7–8.

[24] *Id.*

[25] *Id.* at 9.

[26] *Id.*

[27] *Id.* "Caries" in the dental context means "localized destruction of calcified tissue initiated on the tooth surface… leading to cavity formation that, if left unchecked, penetrates the enamel and dentin and may reach the pulp." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 291 (33rd ed. 2020). "Pulpitis" is defined as "inflammation of the dental pulp, usually due to bacterial infection in dental caries, tooth fracture, or other conditions causing exposure of the pulp to bacterial invasion." *Id.* at 1529.

[28] ECF No. 22–2 at 9.

[29] ECF No. 22 (citing ECF No. 22–2 at 10–11).

[30] Mr. Curdo attached to his complaint Grievance Forms dated December 7, 2023 and two dated December 8, 2023. ECF No. 2–1 at 2, 3, 4. Mr. Curdo's December 7 and 8, 2023 grievances complain about care regarding a rash and the dosage of anti-depressant medication. *Id.*

[31] ECF No. 22–1.

---

[32] ECF No. 2. We screened the Complaint and allowed Mr. Curdo to proceed to service of the summons and complaint on his claims other than his claims for damages from the PrimeCare employees in their official capacities consistent with our obligation under 28 U.S.C. § 1915(e)(2)(B). ECF No. 6.

[33] ECF No. 2 at 16.

[34] *Id.* at 18.

[35] ECF No. 8 at 19. Mr. Curdo signed his motion and certificate of service on January 18, 2024. *Id.* at 19, 20. His motion bears a United States Postal Service date stamp of January 22, 2024. *Id.* at 21. The Clerk's Office docketed his motion on January 25, 2024.

[36] ECF Nos. 22, 23.

[37] *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 319–20 (3d Cir. 2020). Under Rule 65, we "may issue a preliminary injunction only on notice to the adverse party." Rule 65(a)(1). We "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Rule 65(b)(1). The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as the standard for granting a preliminary injunction. *Zaslow v. Coleman*, 103 F. Supp. 3d 657, 662 (E.D. Pa. 2015). We apply the same standard to Mr. Curdo's motion for preliminary injunction and temporary restraining order.

[38] *Bennington Foods LLC v. St. Croix Renaissance Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008); *Public Interest Legal Found. v. Boockvar*, 495 F. Supp. 3d 354, 358 (M.D. Pa. 2020).

[39] *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original).

[40] *Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 102–03 (3d Cir. 2022) (quoting *Swartzwelder v. McNeilly*, 297 F.3d 228, 234 (3d Cir. 2002)).

[41] *Id.* at 103 (quoting *Great Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020).

[42] *Hope*, 972 F.3d at 320 (quoting *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013)).

[43] 18 U.S.C. § 3626(a)(1)(A).

[44] *Id.*

---

[45] *Victory v. Berks Cnty.*, 789 F. App'x 328, 333 (3d Cir. 2019) (citing 18 U.S.C. § 3626(a)(1)(A)) (footnote omitted).

[46] *Moneyham v. Ebbert*, 723 F. App'x 89, 92 (3d Cir. 2018).

[47] *Id.* at 92 (quoting *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992)).

[48] *Yaw v. Delaware River Basin Comm'n*, 49 F.4th 302, 317–18 (3d Cir. 2022).

[49] *Taggart v. Saltz*, 855 F. App'x 812, 815 (3d Cir. 2021) ("declaratory judgment is available to define the legal rights of parties, not to adjudicate past conduct where there is no threat of continuing harm."); *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) ("[d]eclaratory judgment inappropriate solely to adjudicate past conduct.").

[50] *Yaw*, 49 F.4th at 317–18 (citation omitted).

[51] *Id.* at 318 (citation omitted) (emphasis in original).

[52] *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) (footnotes omitted).

[53] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003).

[54] *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (quoting *Natale*, 318 F.3d at 582).

[55] *Id.* (quoting *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347–48 (3d Cir. 1987)).

[56] *Natale*, 318 F.3d at 582; *Thomas*, 88 F.4th at 281.

[57] *Thomas*, 88 F.4th at 281 (quoting *Lanzaro*, 834 F.2d at 347).