**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAMUEL CURDO | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 24-132 |
| | : | |
| COUNTY OF CHESTER, PRIMECARE | : | |
| MEDICAL, INC., JACLYN CASEY, | : | |
| GABRIELLA CHECCHI, KAREN | : | |
| MURPHY, DR. MARTIN ZARKOSKI | : | |
| | : | |

## MEMORANDUM

KEARNEY, J.                                                               July 17, 2024

An incarcerated person awaiting trial in state court complains about the correctional facility's treatment of his skin rash and dental concerns over the past year. The parties into discovery. The County and the medical providers it hired to treat the incarcerated persons now move for summary judgment arguing the incarcerated person did not exhaust the internal grievance process. They further argue we should grant summary judgment in their favor as a matter of law as there are no genuine issues of material fact. The County and medical providers have not shown a complete failure to exhaust. The incarcerated person timely grieved the skin rash claim but not his dental concerns. But the incarcerated person has not adduced evidence suggesting a disputed issue of material fact on whether the facility and its contracted medical providers documented several treatments over many months. Some appeared to work; others did not. But there is no fact basis to find an issue of fact as to whether the facility and its medical providers violated the incarcerated person's constitutional rights. We grant the County and its medical providers summary judgment finding no genuine issue of material fact under the governing law.

**I.   Undisputed Facts**

The Commonwealth has detained Samuel Curdo at the Chester County Prison since July 30, 2023 awaiting his criminal trial in state court.[1] Chester County contracts with PrimeCare Medical, Inc. to provide medical and dental services to inmates of the Prison.[2]

**A.   PrimeCare treats Mr. Curdo's rash.**

Mr. Curdo submitted a sick call request to PrimeCare Medical on August 14, 2023 reporting a rash on the inside of his right upper arm.[3] PrimeCare Medical nurses, physician assistants, a medical doctor, and a consulting dermatologist treated Mr. Curdo on fourteen occasions from August 14, 2023 to March 25, 2024 including performing a biopsy to determine the nature of his skin rash.

*PrimeCare's treatment for rash in August 2023.*

A PrimeCare nurse evaluated Mr. Curdo on August 14 and told him he would be provided hydrocortisone cream twice a day to treat the rash.[4] Mr. Curdo submitted two more sick call requests in August 2023.[5] A PrimeCare Medical nurse evaluated Mr. Curdo on August 24 and PrimeCare Physician Assistant Jaclyn Casey evaluated Mr. Curdo on August 28.[6] Physician Assistant Casey preliminarily assessed Mr. Curdo with contact dermatitis and prescribed medications for treatment.[7] Mr. Curdo did not apply the cream and ointment prescribed to treat his rash on several days in August.[8]

*PrimeCare's treatment for rash in September 2023.*

PrimeCare Physician Assistant Gabriella Checchi and Physician Assistant Casey examined Mr. Curdo on September 6 and September 27, 2023.[9] Physician Assistant Checchi assessed Mr. Curdo with potential conditions of dermatitis or viral exanthem or scabies.[10] She treated Mr. Curdo with medication to treat scabies prophylactically, ordered his clothes and

bedding replaced, his cell "bombed," and if his rash still did not resolve, she would consider oral prednisone.[11] Physician Assistant Checchi directed Mr. Curdo to continue with the cream for itching and to follow up with new symptoms.[12] Mr. Curdo did not consistently apply the cream.[13] Physician Assistant Casey again assessed Mr. Curdo with contact dermatitis and recommended he continue using the cream, switched his antihistamine at his request, and recommended he switch the soap he uses when showering.[14]

Mr. Curdo did not submit sick call requests from September 25 to December 2, 2023 for his rash. He continued his intermittent compliance with application of the prescribed cream.[15]

### PrimeCare's treatment for rash in December 2023 including an outside dermatology consultation.

Physician Assistant Checchi examined Mr. Curdo on December 8, 2023.[16] Physician Assistant Checchi told Mr. Curdo the rash may be a side effect from the increase in dosage of another medicine taken for a different medical condition. A PrimeCare physician examined Mr. Curdo on December 19, 2023 and ordered a dermatology consult.[17] A dermatologist examined Mr. Curdo on December 21, 2023 and diagnosed "rash unspecified."[18] The dermatologist recommended Mr. Curdo continue using the prescribed cream, recommended a biopsy if the condition did not resolve, and prescribed an antibiotic.[19] Physician Assistant Checchi examined Mr. Curdo on December 22, 2023 as a follow up to the dermatology consult. She began the medication prescribed by the dermatologist and directed Mr. Curdo to continue with the cream.[20] Mr. Curdo remained intermittently compliant with his medications for his rash.[21] Physician Assistant Checchi examined Mr. Curdo again on December 27, continuing treatment and prescribing medication.[22] Physician Assistant Checchi's treatment plan at the end of December 2023 consisted of following the regimen recommended by the dermatologist.[23]

*PrimeCare's treatment for rash in January and February 2024 and March 2024 biopsy.*

Physician Assistant Checchi evaluated Mr. Curdo's rash on January 24 and February 13, 2024 for follow-up rash treatment.[24] Physician Assistant Checchi counseled Mr. Curdo on his compliance with his medication regimen with which he admittedly had not fully complied.[25]

Mr. Curdo had a skin biopsy on March 13, 2024 revealing a diagnosis of eczema.[26] Non-party Physician Assistant Brianna Culp examined Mr. Curdo on March 25 to review the biopsy results.[27] The Physician Assistant followed the recommended treatment from the dermatologist and set a follow-up visit in three months or sooner if needed.[28] There is no evidence of further treatment of Mr. Curdo's rash in the record.

## B. PrimeCare's dental treatment.

PrimeCare treated Mr. Curdo's dental issues as he requested on three occasions. Mr. Curdo submitted a sick call request on August 17, 2023 for a dentist to "check [his] gums."[29] PrimeCare dentist Martin Zarkoski, DMD examined Mr. Curdo on August 24 but found no decay and noted Mr. Curdo's gum tissue appeared normal.[30] Dr. Zarkoski noted an "aphthous ulcer," also known as a canker sore, in the "buccal fold" around a tooth.[31] Dr. Zarkoski told Mr. Curdo the ulcer would resolve on its own in ten to fourteen days and concluded no treatment is necessary.[32] Dr. Zarkoski stopped working for PrimeCare on November 1, 2023.[33]

Mr. Curdo submitted another sick call request reporting a painful sore in his lip on September 25, 2023.[34] A PrimeCare nurse scheduled a dental evaluation for September 26, but no security escort became available to bring Mr. Curdo to the medical department.[35] Mr. Curdo admits the ulcer resolved on its own.[36]

Mr. Curdo made no other sick call requests regarding his teeth or gums until January 24, 2024 when he requested care because his "teeth hurt."[37] A PrimeCare nurse examined Mr. Curdo

the next day but could not determine the problem, provided him with ibuprofen as a nursing measure, and scheduled a dental appointment.[38]

Dr. David Kneal, DMD examined Mr. Curdo on January 29, 2024.[39] Dr. Kneal diagnosed a possible cracked tooth or cavity and prescribed Mr. Curdo an antibiotic and ibuprofen for pain.[40] Dr. Kneal counseled Mr. Curdo on the importance of taking the antibiotic three times a day as prescribed.[41] Mr. Curdo did not take any morning doses of antibiotic as prescribed in January and only twenty percent of the prescribed doses in February 2024.[42]

Dr. Kneal last saw Mr. Curdo on March 25, 2024.[43] Dr. Kneal diagnosed Mr. Curdo with an ulcer on the right side of his mouth, told Mr. Curdo the ulcer should heal, and prescribed pain medication.[44] Mr. Curdo did not fully comply with his prescribed medication regimen.[45]

### C.  Mr. Curdo's use of the County's grievance procedure.

Chester County maintains a grievance procedure for the Chester County Prison.[46] The County outlines its grievance process in the Inmate Handbook.[47] Mr. Curdo admits he read and understood the grievance process in the Inmate Handbook.[48]

The County's grievance procedure consists of three steps: (1) Initial Grievance; (2) Initial Review; and (3) Appeals.[49] At the initial grievance step, an inmate must submit a request for a grievance to the Grievance Administrator through an inmate request slip.[50] The Grievance Administrator will issue a formal Grievance Form to the inmate who must complete the Form and submit it to the Grievance Administrator for "initial review" within fifteen days of the complained-of event.[51]

At the second step, the Grievance Administrator assigns a grievance tracking number and enters the grievance into the grievance log.[52] The Grievance Administrator initially reviews a grievance for a determination it "is in accordance with the Grievance Form inmate

responsibilities."[53] If not "in accordance" it "shall be returned to the inmate unprocessed with a grievance rejection form enumerating the reason(s)" for the rejection.[54] If the Grievance Officer submits the grievance for "formal resolution," the Grievance Officer "shall provide" a written response to the inmate within ten days of receipt and "shall include" a "Brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issue(s) … in the grievance" and "shall also include" a determination, based on "the facts uncovered during review," if the grievance is "frivolous."[55]

At the third step, an inmate may appeal the decision of the Grievance Administrator to the Warden within a prescribed time period.[56] The Grievance Administrator's Initial Review decision "must be received by the inmate before any appeal to the Warden can be sought."[57]

### *Grievances relating to skin rash*

Mr. Curdo sued here on January 8, 2024. Mr. Curdo submitted a grievance complaining about the lack of medical treatment of his rash on February 14, 2024.[58] Mr. Curdo complained Physician Assistant Checchi told him "she could do nothing about" his rash "because I'm here" and complained he is "being refused treatment and care for my rash."[59] The February 14, 2024 Grievance Form is not signed by an officer at the bottom of the Form.[60]

Karen Murphy, registered nurse and Health Services Administrator at the Prison, reviewed Mr. Curdo's post-complaint February 14, 2024 grievance and chart. She prepared a memorandum for Tim Mulrooney, Director of Inmate Services at the Prison.[61] Nurse Murphy is responsible for responding to inmate grievances.[62] Nurse Murphy summarized the medical care given to Mr. Curdo for his rash, including a referral to a physician and a dermatology consult, noting medical providers saw Mr. Curdo on twelve occasions offering multiple treatment modalities with varying degrees of success.[63] Nurse Murphy concluded PrimeCare Medical

addressed Mr. Curdo's complaint regarding his rash in a responsive and clinically appropriate manner.[64]

The County's inmate grievance Policy requires a Grievance Coordinator to, *inter alia*, assign a grievance tracking number to Mr. Curdo's February 14, 2024 grievance, enter his grievance into a grievance log, and provide an Initial Review decision to Mr. Curdo. The record shows only Nurse Murphy's summary to Director Mulrooney. There is no record of Mr. Curdo's receipt of an Initial Review decision.

The County and PrimeCare providers are unclear (at a minimum) about what happened in the grievance procedure. They both baldly assert the "County had a copy of **one** Grievance submitted by [Mr. Curdo] about his rash"—the February 14, 2024 post-litigation Grievance Form.[65] But their produced record shows Mr. Curdo filed at least one and possibly three grievances in December 2023 before he sued on January 8, 2024.[66] The County (notwithstanding their representation to us) also does not dispute Mr. Curdo "submitted several grievance forms, one of which was submitted on December 8, 2023 … generally in reference to a rash that [Mr. Curdo] complained about … However, [Mr. Curdo] could not tell which officer might have received the grievance."[67]

PrimeCare asked Mr. Curdo during his deposition "about the Grievance Forms."[68] Counsel asked Mr. Curdo: "There is one grievance dated December 8, 2023 talking about your rash generally speaking. Is that correct?"[69] Mr. Curdo responded "yes," swearing he wrote the December 8, 2023 Grievance Form in his own handwriting and in his own words and explained he wrote two Grievance Forms on December 8, 2023 with one serving as his "copy" and the other the "original" he "never got back."[70] Mr. Curdo could not identify the officer who received his December 8, 2023 Grievance Form, testifying "it could be anyone, I don't know who picks it

up. It goes to different people. … None of them got signed. I've thrown them in and never got responses. Like if I get a response, if I have to, … I could appeal it but I couldn't appeal anything. I never got responses to any of these."[71] There is no record of an appeal taken by Mr. Curdo from a decision on his grievance relating to his rash. Mr. Curdo swore he filed only one appeal: "[i]t was for something that wasn't involved with my rash or anything" and identified the one appeal as "[i]t was the one of my cellie [sic] being on the floor, who was pretty much commanding my TV over me and then – that was the only thing."[72]

PrimeCare's proffered expert, Alfred Joshua, MD provided a "Summary of Document Review" in his expert report listing the documents he reviewed in forming his opinion.[73] Dr. Joshua lists December 1, 2023 and December 8, 2023 grievances relating to Mr. Curdo's skin rash.[74] There is no explanation from PrimeCare how its expert Dr. Joshua is in possession of two December 2023 grievances relating to the rash. Nor does PrimeCare explain how it could credibly argue Mr. Curdo grieved the skin rash issue only once and after he sued here. Its submitted undisputed facts confirm its apparent lack of knowing the record on this issue.

### *Grievances regarding dental care.*

Both the County and PrimeCare providers assert Mr. Curdo did not submit a grievance complaining about dental care as of February 6, 2024, nearly one month after Mr. Curdo filed this case.[75] Health Services Administrator Nurse Murphy swore on February 6, 2024 she reviewed Mr. Curdo's PrimeCare chart and found no grievances filed by Mr. Curdo concerning dental care.[76]

Despite the County's assertion Mr. Curdo "had not submitted *any* grievances about dental care" as of February 6, 2024, counsel questioned Mr. Curdo about a January 15, 2024 grievance regarding dental issues.[77] Mr. Curdo swore he prepared a Grievance Form dated

January 15, 2024 regarding dental care, conceded it is not signed by an officer, and he "probably [does] not" have a Grievance Form before January 15, 2024 because he "started getting issues a little bit before then."[78] PrimeCare's expert Dr. Joshua reviewed a January 15, 2024 "Grievance related to dental issues."[79] There is nothing in the record of an appeal taken by Mr. Curdo from a decision on his grievance relating to dental care.

### D.     A dentist performs an independent medical examination.

Sander White, DDS conducted an independent medical examination of Mr. Curdo on May 20, 2024.[80] Dr. White found Mr. Curdo's dental health as "healthy with a single carious lesion (cavity) on the lingual surface of the upper left first molar tooth which by its nature looks to have been present for at least a year or two and does not require immediate treatment. There is no evidence of any oral soft tissue pathology present nor is there any evidence of previous ulceration visible. As such there is no clinical evidence to support the claim made in [Mr. Curdo's] complaint."[81]

Dr. White recommended the cavity "is not an urgent finding [and] may be attended to when convenient. There is no other apparent pathology requiring attention other than normal routine dental care consisting of periodic examination and prophylaxis."[82] Dr. White concluded there is no breach of the standard of care.[83]

Mr. Curdo had a cavity present for "at least a year or two," as determined by Dr. White and which PrimeCare's dentist Dr. Kneal found "possible" in a January 29, 2024 examination.[84] There is nothing in the record showing dental treatment of Mr. Curdo's cavity to date but also no grievance of a cavity concern.

## II.    Analysis

Mr. Curdo sued the County and PrimeCare providers seeking damages, including punitive damages, for the alleged deprivation of medical care in violation of the Fourteenth Amendment under 42 U.S.C. § 1983. He also sought prospective injunctive relief asking us to order state actors to provide medical treatment without delay.[85] Mr. Curdo alleges the individual PrimeCare providers—Dr. Zarkoski, Nurse Murphy, and Physician Assistants Casey and Checchi—acted with deliberate indifference to his serious medical conditions causing him pain by ignoring his repeated requests for medical care.[86] He seeks to hold the County and PrimeCare Medical liable under a *Monell* theory of liability based on a policy or custom.[87] Mr. Curdo alleges the County and PrimeCare Medical have a policy and custom to deny dental care and medical care for non-medical reasons, including a policy to delay access to medical care and ignore requests for medical care.[88]

We granted Mr. Curdo's motion to proceed *in forma pauperis* and screened his Complaint under 28 U.S.C. § 1915(e)(2)(B).[89] We permitted Mr. Curdo to proceed on his claims against the County, PrimeCare Medical, and individual capacity claims against the individual Defendants. The parties proceeded into discovery.

The County and PrimeCare providers now separately move for summary judgment.[90] The County argues it is entitled to summary judgment because: (1) Mr. Curdo did not exhaust his administrative remedies through the County's grievance procedure; and (2) Mr. Curdo cannot show a policy, practice, or custom required for *Monell* liability.

The PrimeCare providers argue they are entitled to summary judgment because: (1) Mr. Curdo did not exhaust his administrative remedies; (2) Mr. Curdo cannot show deliberate

indifference to a serious medical condition as to his dental and skin rash issues; and (3) Mr. Curdo cannot show a policy or custom required for *Monell* liability.

Mr. Curdo did not respond to the motions for summary judgment now pending for over forty days nor did he seek an extension to respond.

### A. Fact issues preclude summary judgment on administrative exhaustion as to Mr. Curdo's rash care but not dental care.

Congress, through the Prison Litigation Reform Act, prohibits an action "with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[91] Denial of medical care is a "prison condition" under the Act.[92]

Exhaustion under the Act is mandatory.[93] There is no futility exception to the Act's exhaustion requirement.[94] An untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the Act.[95] A prisoner may not satisfy the exhaustion requirement after the filing of a complaint.[96]

A prisoner must "properly" exhaust a claim.[97] "Proper" exhaustion means exhaustion of administrative remedies available to the prisoner through the prison's grievance process.[98] We determine whether Mr. Curdo properly exhausted his claims by evaluating his compliance with the County's Policies and Procedures on inmate grievances.[99]

### 1. Fact issues surrounding Mr. Curdo's exhaustion of the County's grievance process regarding his skin rash preclude summary judgment on exhaustion.

At the first step of the County's grievance Policy—the Initial Grievance—a request for a grievance "must be submitted to the grievance administrator by way of inmate request slip. A formal grievance form will be issued to the inmate."[100]

We have four documents entitled "Chester County Prison Official Inmate Grievance Form" filled out, signed, and dated by Mr. Curdo: three attached to Mr. Curdo's Complaint and one in the PrimeCare Defendants' appendix. The County and PrimeCare providers assert the County had only one Grievance Form relating to the rash—the February 14, 2024 grievance. But the County does not cite the record; it simply asserts the fact without cite. And the PrimeCare Defendants simply cite the February 14, 2024 grievance itself to support its assertion the County had only one grievance. Neither cite Nurse Murphy's February 6, 2024 Affidavit. Nurse Murphy, a PrimeCare employee and the Health Services Administrator at the Prison responsible for responding to inmate grievances swore only to the dental care issues, not the rash. We have no updated affidavit from Nurse Murphy.

The County and PrimeCare providers ask us to accept it is undisputed Mr. Curdo filed only one grievance relating to his rash: the February 14, 2024 post-litigation grievance. But the record they submitted confirms grievances in December 2023 and, in fact, the PrimeCare providers' expert considered the December 2023 grievances in forming his opinion and counsel questioned Mr. Curdo about the December 8, 2023 Grievance Form. There is nothing in the record showing the County's or PrimeCare's compliance with step two of the inmate grievance Policy, even for the February 14, 2024 grievance. And the evidence we do have is Mr. Curdo's sworn deposition testimony he filed grievances in December 2023 about his rash but "none of them got signed"; he "never got responses"; and "if I get a response … I could appeal it but I couldn't appeal anything. I never got responses to any of these."[101] Both the second and third step of the County's grievance Policy requires a Grievance Administrator to provide a written "Initial Review" decision which is required before an inmate may appeal to the Warden.[102]

Failure to exhaust administrative remedies is an affirmative defense a defendant must plead and prove.[103] The Supreme Court, though Rule 56, requires parties moving for summary judgment support their assertion of fact by cites to the record, including depositions and affidavits. The County and PrimeCare providers did not meet their Rule 56 burden to prove the affirmative defense of administrative exhaustion.[104] Fact issues critical to evaluating exhaustion as to treatment for rash care preclude the entry of summary judgment.

### 2. Mr. Curdo did not exhaust the County's grievance process regarding dental care.

Mr. Curdo sued the County and PrimeCare providers on January 8, 2024. Nurse Murphy swears as of February 6, 2024, Mr. Curdo did not submit a grievance about dental care. Counsel questioned Mr. Curdo about a January 15, 2024 grievance regarding dental issues.[105] Mr. Curdo swore he prepared a Grievance Form dated January 15, 2024 regarding dental care, conceded it is not signed by an officer, and he "probably [does] not" have a Grievance Form before January 15, 2024 because he "started getting issues a little bit before then."[106] PrimeCare's expert Dr. Joshua reviewed a January 15, 2024 "Grievance related to dental issues."[107]

Mr. Curdo's submitted his alleged January 15, 2024 grievance after he sued here. Mr. Curdo may not satisfy the exhaustion requirement after he sues on the same basis.[108] Mr. Curdo did not exhaust the County's grievance process regarding dental care requiring we enter summary judgment in favor of the County and PrimeCare providers dismissing claims based on the dental issues.

### B. We enter summary judgment dismissing the civil rights claims.

Mr. Curdo sued the County and PrimeCare Medical, Inc. and its employees under section 1983. Section 1983 itself is not a source of substantive rights; it is a vehicle to vindicate federal rights "elsewhere conferred."[109] Incarcerated persons challenging the adequacy of medical

treatment assert claims under the Eighth Amendment.[110] But Mr. Curdo is a pretrial detainee, so his claims arise under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment.[111] The Fourteenth Amendment "affords pretrial detainees protections at least as great as the Eighth Amendment protections available to a convicted prisoner."[112]

We evaluate Mr. Curdo's Fourteenth Amendment claim for inadequate medical care under the standard used to evaluated similar claims under the Eighth Amendment.[113] Mr. Curdo must show evidence of (1) a serious medical need; and (2) acts or omissions by Prison officials indicating "deliberate indifference" to his serious medical need.[114]

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention."[115]

"Deliberate indifference" to a serious medical need is a "subjective standard consistent with recklessness."[116] This standard requires "both that an individual be aware of facts from which the inference could be drawn of a substantial risk and that the individual actually draws that inference."[117] "Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."[118] Our Court of Appeals instructs where medical attention is rendered and the dispute is over the adequacy of the treatment, we are "generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."[119] But our Court of Appeals instructs there are some circumstances where care is provided but fails to satisfy constitutional requirements, for example, where prison officials with deliberate indifference to serious medical needs opt for "easier and less efficacious treatment" or where prison officials deny reasonable requests for medical care exposing the

inmate to "undue suffering or the threat of tangible residual injury."[120] Where an incarcerated person alleges inadequate medical care, our Court of Appeals finds deliberate indifference "where objective evidence of a serious need for care is ignored and where necessary medical treatment is delayed for non-medical reasons."[121]

**1. There is no evidence of deliberate indifference to Mr. Curdo's skin rash.**

Mr. Curdo alleged PrimeCare Nurse Murphy and Physician Assistants Casey and Checchi "ignore[d], delay[ed], and act[ed] deliberately indifferent to" his ongoing "infected skin wounds," an "objectively serious medical condition," by "ignor[ing]" and "delay[ing]" treatment in response to his sick call requests.[122] Mr. Curdo alleges Nurse Murphy and Physician Assistants Casey and Checchi did so for the non-medical reason to "save money."

Mr. Curdo specifically alleges Nurse Murphy and Physician Assistants Casey and Checchi "failed to act" with regard to medical treatment for his rash on August 14, 2023, September 15, 2023, October 1 and 9, 2023, November 20, 2023, and December 2 and 11, 2023.[123] He claims Physician Assistants Casey and Checchi refused to provide him "emergency care" on December 27, 2023.[124] He alleges as of January 3, 2024, PrimeCare Medical and Nurse Murphy had denied him care for his rash "in excess of three months."[125]

There is nothing in the record to support Mr. Curdo's allegations regarding the denial of medical care and treatment of his rash. PrimeCare Medical professionals, largely Physician Assistants Casey and Checchi, evaluated and treated Mr. Curdo on August 14, 24, and 28, 2023 and September 6 and 27, 2023. There is nothing in the record showing Mr. Curdo made a sick call request between September 25 and December 2, 2023.

Physician Assistant Checchi examined Mr. Curdo on December 8, 2023. A PrimeCare physician examined him on December 19, 2023 and an outside dermatologist examined Mr.

Curdo on December 21, 2023. PrimeCare provided medical treatment for his rash on December 22 and December 27, 2023. PrimeCare provided treatment on January 24, February 13, and March 13, 2024 and had a biopsy on March 25, 2024 resulting in a confirmed diagnosis of eczema.

Mr. Curdo had fourteen medical encounters, examination by two physicians including one dermatology specialist, and a skin biopsy from August 14, 2023 to March 25, 2024. PrimeCare provided medication through the entire time period. He did not comply with his medication at times. He did not make a sick call request for his rash for approximately two months.

There is nothing in the record to support Mr. Curdo's allegation PrimeCare employees "ignored" or "delayed" medical treatment for his rash. Even if eczema is considered a "serious medical condition," Mr. Curdo offers nothing to show deliberate indifference requiring evidence the PrimeCare Medical employees knew of and disregarded an excessive risk to Mr. Curdo's health or safety with regard to his eczema.[126]

We enter judgment in favor of the PrimeCare providers Nurse Murphy and Physician Assistants Casey and Checchi on the denial of medical care claims relating to rash.

**2.   There is no evidence of deliberate indifference to Mr. Curdo's dental issues.**

Mr. Curdo sued dentist Dr. Zarkoski in his individual capacity for "refus[ing] corrective care and preventative action" in the form of cavity repair, temporary fillings, cleanings or x-rays for over six months.[127] Mr. Curdo alleges Dr. Zarkoski, Nurse Murphy, and Physician Assistants Casey and Checchi denied dental treatment for "non-medical customs."[128] He alleges all "Defendants" knew, but "continued to ignore" his "many" dental request slips and complaints regarding his cavities and refused and delayed treatment.[129]

Mr. Curdo alleges Nurse Murphy ignored his requests for dental care on August 17 and August 27, 2023 sick call requests and Dr. Zarkoski refused his "urgent care" requests to treat tooth pain.[130] There is nothing in the record showing Mr. Curdo requested dental care on August 17 and 27, 2023. The record instead shows Mr. Curdo requested a dentist to "check my gums" on August 17, 2023 and Dr. Zarkoski examined him in response to the request on August 24, 2024.[131] Dr. Zarkoski examined Mr. Curdo and found no apparent decay present, normal periodontal tissue, and a canker sore in Mr. Curdo's cheek near a tooth.[132] Dr. Zarkoski advised Mr. Curdo the canker sore would resolve on its own in ten to fourteen days. Dr. Zarkoski left PrimeCare's employ on November 1, 2023 and had no further contact with Mr. Curdo.

Mr. Curdo made another sick call request on September 25, 2023, reporting a painful sore in his lip at the front of his mouth and asking for dental care.[133] Non-party Nurse Lawson created a task the same day for evaluation by medical staff on September 26 but the Facility's staff could not provide an escort to transport Mr. Curdo to the medical department.[134] Mr. Curdo swore the sore resolved on its own.[135]

There is nothing in the record of sick call requests by Mr. Curdo from September 25, 2023 to January 24, 2024.[136] On January 24, 2024—approximately two weeks after filing his complaint here—Mr. Curdo submitted another sick call request form asking to be seen by a dentist because his "teeth hurt."[137] Non-party dentist Dr. Kneal examined Mr. Curdo five days later. Dr. Kneal concluded Mr. Curdo may have a cavity and prescribed Mr. Curdo an antibiotic.[138] Mr. Curdo intermittently complied with taking the prescribed antibiotic.

Dentist Dr. Sander White conducted an independent dental examination of Mr. Curdo in May 2024. Dr. White found Mr. Curdo had a cavity present for at least a year or two and did not

require immediate treatment, concluded it is not an "urgent finding," and may be "attended to when convenient." Dr. White found no other pathology requiring attention.[139]

Mr. Curdo shows nothing in the record to support his allegation Dr. Zarkoski, Nurse Murphy, and Physician Assistants Casey and Checchi refused to provide dental care and ignored dental care. The record confirms treatment in response to Mr. Curdo's requests for dental care contradicting his allegation of deliberate indifference to his dental issues. We enter summary judgment in favor of the individual PrimeCare providers as to the denial of dental care.

### 3.  Mr. Curdo does not show a basis for a *Monell* claim.

Mr. Curdo sued the County and PrimeCare Medical under section 1983 on a *Monell* theory of liability.[140] The County and PrimeCare Medical cannot be held liable under section 1983 solely for the conduct of its employees.[141] The County and PrimeCare Medical may be held liable under section 1983 only if Mr. Curdo is able to identify a policy or custom causing a constitutional violation.[142]

Mr. Curdo alleges the County and PrimeCare Medical have a policy and custom to deny dental care and medical care for non-medical reasons, including a policy to delay access to medical care and ignore requests for medical care to save money.[143] But neither the County nor PrimeCare Medical may be liable under section 1983 when "a person has suffered no constitutional injury at the hands of the individual [defendants]."[144] We already concluded Mr. Curdo shows nothing in the record creating a fact issue the individual PrimeCare providers acted with deliberate indifference to Mr. Curdo's serious medical condition. Mr. Curdo's *Monell* claim fails for this reason.[145]

But even if we found a fact issue precluding summary judgment on the denial of medical care claim based on the rash treatment against the individual PrimeCare providers, Mr. Curdo's

*Monell* claim against the County and PrimeCare Medical would not proceed because there is nothing in the record to show a policy or custom causing a constitutional harm. For a policy, Mr. Curdo must show an official with final decision-making authority issued an "official proclamation, policy, or edict."[146] For a custom, Mr. Curdo must show "a course of conduct, although not authorized by law, was so permanent and well settled as to virtually constitute law."[147] In either case, a "policymaker, as defined under state law, must be responsible either for the policy or, through acquiescence, for the custom."[148]

Mr. Curdo adduces no evidence suggesting the County or a PrimeCare Medical policymaker maintained either a policy or custom of denying and limiting medical care to inmates at the Prison for non-medical reasons. We enter judgment in favor of the County and PrimeCare Medical, Inc.

## III.  Conclusion

The undisputed record confirms the County and PrimeCare Defendants consistently provided medical care to Mr. Curdo in the treatment of his rash and dental issues. He may not like the results of the treatment but disagreement with the course of treatment does not violate a constitutionally protected right. The bottom line is Mr. Curdo received medical treatment for his rash, including visits with Physician Assistants, a physician, and a consulting dermatologist, and a biopsy to confirm a diagnosis of eczema. Mr. Curdo did not exhaust the County's grievance process for his dental issues. But even if he did, two dentists examined him and provided medical care. We grant summary judgment in favor of the County and PrimeCare Defendants on all claims.

---

[1] Chester County Statement of Undisputed Facts, ECF No. 43–1 ¶¶ 2, 5. Our Policies require parties moving for relief under Fed. R. Civ. P. 56 include a Statement of Undisputed Material Facts ("SUMF") and an appendix to support summary judgment. Defendant County of Chester filed its Motion, SUMF, Memorandum in support of summary judgment, and Appendix at ECF Nos. 43, 43–1, 43–2, and 43–3. Defendants PrimeCare Medical, Inc., Jaclyn Casey, PA-C, Gabriella Checchi, PA-C, Karen Murphy, RN, and Martin Zarkoski, DMD (collectively "PrimeCare providers") also moved for summary judgment, filing their Motion, SUMF, Memorandum in support of summary judgment and Appendix at ECF Nos. 41, 41–1, 42, and 42–1. Mr. Curdo did not respond to the motions for summary judgment for over forty days.

[2] ECF No. 43-1, Chester County SUMF ¶ 3.

[3] ECF No. 42, PrimeCare SUMF ¶¶ 27–28.

[4] *Id.* ¶¶ 29, 30.

[5] *Id.* ¶¶ 45, 49–50.

[6] *Id.* ¶¶ 45–53.

[7] *Id.* ¶¶ 53–54. Dermatitis is an inflammation of the skin. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 488 (33rd ed. 2020). Contact dermatitis is "acute or chronic dermatitis caused by substances coming in contact with the skin; it may involve either allergic or nonallergic mechanisms." *Id.*

[8] ECF No. 42, PrimeCare SUMF ¶¶ 31–33, 55; ECF No. 42-1, PrimeCare Appendix 85a.

[9] ECF No. 42, PrimeCare SUMF ¶¶ 73, 92–98.

[10] *Id.* ¶ 79; ECF No. 42-1, PrimeCare Appendix 103a. "Viral exanthem" are skin eruptions or rashes caused by a virus. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 649 (33rd ed. 2020). Scabies is a contagious dermatitis affecting humans caused by the scabiei mite. *Id.* at 1644.

[11] ECF No. 42, PrimeCare SUMF ¶ 80, ECF No. 42-1, PrimeCare Appendix 103a.

[12] ECF No. 42-1, PrimeCare Appendix 103a.

[13] Mr. Curdo applied forty percent of the morning doses and seventy-three percent of the evening doses of triamcinolone prescribed to treat his rash in September 2023. ECF No. 42, PrimeCare SMF ¶¶ 56–57.

[14] ECF No. 42, PrimeCare SUMF ¶¶ 95-98, ECF No. 42-1, PrimeCare Appendix 102a–103a.

[15] For example, in October 2023, Mr. Curdo applied forty-three percent of the morning doses and seventeen percent of the evening doses of triamcinolone. ECF No. 42, PrimeCare SUMF ¶¶ 59-

60. He applied twenty-five percent of the morning doses and sixty-seven percent of the evening doses of triamcinolone ointment in November 2023. *Id.* ¶¶ 61-62.

[16] *Id.* ¶ 101.

[17] *Id.* ¶¶ 111–115; ECF No. 42-1, PrimeCare Appendix 100a-101a.

[18] ECF No. 42, PrimeCare SUMF ¶¶ 116, 118, ECF No. 42-1, PrimeCare Appendix 100a.

[19] ECF No. 42, PrimeCare SUMF ¶¶ 119–121, 125. Physician Assistant Checchi ordered doxycycline, a drug used for the treatment of skin infections. *See* https://www.pdr.net/drug-summary/? drugLabelId=24308# dosage-and-indications.

[20] ECF No. 42, PrimeCare SUMF ¶ 125; ECF No. 42-1, PrimeCare Appendix 100a.

[21] Mr. Curdo applied the morning dose of triamcinolone thirty-three percent of the time and sixty-one percent of his evening dose and took only thirty-three percent of his morning doses of doxycycline but 100 percent of his evening doses in December 2024. ECF No. 42, PrimeCare SUMF ¶¶ 126–28.

[22] *Id.* ¶¶ 129–32.

[23] *Id.* ¶ 132.

[24] *Id.* ¶¶ 133, 158.

[25] *Id.* ¶¶ 135, 139, 159, 160, 162, 163.

[26] *Id.* ¶¶ 165, 167. Eczema is a type of dermatitis "occurring as reactions to endogenous or exogenous agents." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 586 (33rd ed. 2020). Dermatitis is an inflammation of the skin. *Id.* at 488.

[27] ECF No. 42, PrimeCare SUMF ¶ 166.

[28] ECF No. 42-1, PrimeCare Appendix 114a.

[29] ECF No. 42, PrimeCare SUMF ¶ 34; ECF No. 42-1, PrimeCare Appendix 105a.

[30] ECF No. 42, PrimeCare SUMF ¶¶ 36–37.

[31] *Id.* ¶ 39. An aphthous ulcer is an ulcerative lesion on the oral mucosa of the mouth. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 267, 1967 (33rd ed. 2020). "Buccal" means "pertaining to or directed toward the cheek. In dental anatomy, used to refer to the buccal surface of a tooth." *Id.* at 253.

[32] ECF No. 42, PrimeCare SUMF ¶¶ 40–43.

[33] *Id.* ¶ 44.

[34] *Id.* ¶¶ 86–87.

[35] *Id.* ¶ 88.

[36] ECF No. 43–3, Chester County Appendix 111a–112a.

[37] ECF No. 42, PrimeCare SUMF ¶¶ 140–41.

[38] *Id.* ¶¶ 142–46.

[39] *Id.* ¶ 147.

[40] *Id.* ¶¶ 148–53.

[41] *Id.* ¶ 154.

[42] *Id.* ¶¶ 156–57.

[43] *Id.* ¶ 171; ECF No. 42-2, PrimeCare Appendix 116a.

[44] ECF No. 42-2, PrimeCare Appendix 116a.

[45] ECF No. 42, PrimeCare SUMF ¶¶ 176–78.

[46] ECF No. 43-1, Chester County SUMF ¶ 13; ECF No. 43-3, Chester County Appendix 207a–211a.

[47] ECF No. 43-1, Chester County SUMF ¶ 13.

[48] ECF No. 43-3, Chester County Appendix 40a–41a.

[49] *Id.*, Appendix 207a–211a.

[50] *Id.*, Appendix 208a, ¶ 3.

[51] *Id.*, Appendix 208a, ¶¶ 4, 5.

[52] *Id.*, Appendix 209a, ¶ 1.

[53] *Id.*, Appendix 209a, ¶¶ 2, 3.

[54] *Id.*, Appendix 209a, ¶ 3.

[55] *Id.*, Appendix 209a ¶ 4.

[56] *Id.*, Appendix 210a.

[57] *Id.*, Appendix 210a, ¶ 1.

[58] ECF No. 42-1, PrimeCare Appendix 157a.

[59] *Id.*

[60] *Id.*

[61] *Id.*, Appendix 158a.

[62] *Id.*, Appendix 154a, ¶ 3.

[63] *Id.*

[64] *Id.*

[65] ECF No. 42, PrimeCare SUMF ¶ 192 citing ECF No. 41-1, PrimeCare Appendix 157a (emphasis added); ECF No. 43-2, Chester County memorandum in support of summary judgment at 2.

[66] *See* Complaint, ECF No. 2–1 at 2, 3, 4 attaching Inmate Grievance Forms on December 8, 2023, December 1, 2023, and December 7, 2023. Neither the County nor the Prime Care Defendants submitted the December 2023 Grievance Forms in their respective appendices. This is so despite questioning Mr. Curdo about the December 8, 2023 Grievance Form at his deposition. We located the December 2023 Grievance Forms attached to Mr. Curdo's Complaint. *Id.*

[67] ECF No. 43-1, Chester County SUMF ¶ 14, citing Mr. Curdo's deposition testimony at ECF No. 43-3, Chester County Appendix 44a–45a.

[68] ECF No. 43–3, Chester County Appendix 44a.

[69] *Id.*, Appendix 45a.

[70] *Id.*, Appendix 45a.

[71] *Id.*, Appendix 45a–46a.

[72] *Id.*, Appendix 46a.

---

[73] ECF No. 42-1, PrimeCare Appendix 35a–39a.

[74] *Id.*, Appendix 37a.

[75] ECF No. 42, PrimeCare SUMF ¶ 190.

[76] ECF No. 42–1, PrimeCare Appendix 154a, ¶ 6.

[77] *Compare* ECF No. 43-2, Chester County memorandum in support of summary judgment at 1 *with* ECF No. 43-1, Chester County SUMF ¶ 16 (emphasis added).

[78] ECF No. 43-3, Chester County Appendix 47a–48a.

[79] ECF No. 42-1, PrimeCare Appendix 38a.

[80] ECF No. 42, PrimeCare SUMF ¶ 179; ECF No. 42-1, PrimeCare Appendix 133a–134a.

[81] ECF No. 42-1, PrimeCare Appendix 133a.

[82] *Id.*, Appendix 134a.

[83] *Id.*

[84] *Id.*, Appendix 116a.

[85] ECF No. 2 at 17–18. We denied Mr. Curdo's motion for immediate injunctive relief on February 21, 2024. *See* ECF Nos. 25, 26.

[86] ECF No. 2 at 9–10, ¶¶ 2, 3; 12–15, ¶¶ 2–3, 5–10. Mr. Curdo's complaint alleges the denial of medical treatment for his skin rash and dental issues as well as denial of medical treatment for his pre-existing gastrointestinal issues and asthma. *See* ECF No. 2 at 9, ¶ 2; 12, ¶ 1; 13–14, ¶ 6; and 15, ¶ 9. The parties did not develop a record on the gastrointestinal and asthma issues. Mr. Curdo swore at his deposition his case pertains to dental and rash issues. ECF No. 43-3, Chester County Appendix 117a–118a. We focus our analysis on Mr. Curdo's claims regarding the denial of treatment for his rash and dental issues.

[87] *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

[88] ECF No. 2 at 8–9, ¶ A.1.

[89] ECF Nos. 5, 6. We dismissed Mr. Curdo's official capacity claims against individual defendants Physician Assistants Jaclyn Casey and Gabriella Checchi, Administrator Nurse Karen Murphy, and Dr. Martin Zarkoski.

[90] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.* (citing *Celotex*, 477 U.S. at 322–23).

[91] 42 U.S.C. § 1997e.

[92] *Wallace v. Doe*, 512 F. App'x 141, 143 (3d Cir. 2013).

[93] *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

[94] *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).

[95] *Woodford*, 548 U.S. at 83–84.

[96] *Wallace v. Miller*, 544 F. App'x 40, 42 (3d Cir. 2013).

[97] *Spruill v. Gillis*, 372 F.3d 218, 228–30.

[98] *Woodford*, 548 U.S. at 93–94.

[99] *Prater v. Dep't of Corr.*, 76 F.4th 184, 203 (3d Cir. 2023) (quoting *Spruill*, 372 F.3d at 222).

[100] ECF No. 43–3, Chester County Appendix 208a, ¶ 3.

[101] *Id.*, Appendix 46a.

[102] *Id.*, Appendix 209a–210a.

[103] *Small v. Camden Cnty.*, 728 F.3d 265, 268 (3d Cir. 2013).

[104] It is true none of the December 2023 Grievance Forms are signed and dated by the "Complaint Officers [sic] Signature." ECF No. 2–1 at 2– 4. But we do not find the absence of an officer's signature dispositive because the February 14, 2024 Grievance Form is not signed by an officer and the County concedes receipt of the February 14, 2024 grievance as reviewed by Nurse Murphy.

[105] *Compare* ECF No. 43-2, Chester County memorandum in support of summary judgment at 1 *with* ECF No. 43-1, Chester County SUMF ¶ 16.

[106] ECF No. 43-3, Chester County Appendix 47a–48a.

[107] ECF No. 42-1, PrimeCare Appendix 38a.

[108] *Wallace*, 544 F. App'x at 42.

[109] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

[110] *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976) (the failure to provide adequate medical care to convicted prisoners constitutes cruel and unusual punishment under the Eighth Amendment).

[111] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (cleaned up).

[112] *Id.*

[113] *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 n. 23 (3d Cir. 2023) (citing *Natale*, 318 F.3d at 581–82).

[114] *Natale*, 318 F.3d at 582 (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

[115] *Thomas*, 88 F.4th at 281 (quoting *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347–48 (3d Cir. 1987)).

[116] *Id.* (quoting *Natale*, 318 F.3d at 582).

[117] *Id.*

[118] *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017).

[119] *Id.* (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

[120] *Id.* at 228 (citations omitted).

[121] *Thomas*, 88 F.4th at 281 (cleaned up).

[122] ECF No. 2 at 9, ¶ 3.

[123] *Id.* at 12, ¶ 2.

[124] *Id.* at 14, ¶ 7.

[125] *Id.* at 15, ¶ 10.

[126] A serious medical need must be one if left untreated "can be expected to lead to substantial and unnecessary suffering, injury, or death." *Tskonas v. Cicchi,* 308 F. App'x 628, 632 (3d Cir. 2009). In *Tskonas*, our Court of Appeals found "weight loss, eczema of the feet, seborrhea of the scalp, athlete's foot, constipation, and swollen knuckles … are not life-threatening conditions." *Id.* In *Arnold v. Phillips*, No. 10-5090, 2012 WL 2945235 (E.D. Pa. July 19, 2012), Judge Padova granted George W. Hill Correctional Facility's motion to dismiss a complaint in which an incarcerated person alleged denial of medical care for asthma, eczema, and mental health issues. Judge Padova concluded the prisoner's allegation he requested medical care three times in one month for his asthma and eczema and did not receive timely care or treatment did not amount to a serious medical condition putting him at excessive risk rising to a constitutional deliberate indifference. *Id.* at *3.

We have significant reservations eczema is a "serious medical condition." The PrimeCare providers argue eczema is not a serious medical condition, analogizing eczema to cuts or bruises to the skin and citing cases in this Circuit finding such conditions not a "serious medical condition." ECF No. 41–2 at 13–16. We have no evidence in the record from an expert regarding the seriousness of eczema. We decline to make such an evaluation because, as discussed above, even if eczema is a serious medical condition required for a constitutional claim, there is no basis to find deliberate indifference to the condition.

[127] ECF No. 2 at 8, ¶ 1.

[128] *Id.*

[129] *Id.* at 12–13, ¶ 3.

[130] *Id.* at 13, ¶¶ 4–5.

[131] ECF No. 42–1, PrimeCare Appendix 98a, 105a.

[132] *Id.*, Appendix 98a.

[133] *Id.*, Appendix 109a.

[134] ECF No. 42, PrimeCare SUMF ¶¶ 86–88.

[135] ECF No. 43-3, Chester County Appendix 114a–115a.

[136] ECF No. 42, PrimeCare SUMF ¶ 89.

[137] ECF No. 42-1, PrimeCare Appendix 111a.

[138] ECF No. 42, PrimeCare SUMF ¶¶147–155.

[139] ECF No. 42-1, PrimeCare Appendix 133a–134.

[140] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The elements of a section 1983 claim requires (1) defendants acting under color of state law (2) deprived plaintiff of a right secured by the Constitution or federal law. Private entities, like PrimeCare Medical, Inc., contracting with municipalities, like the County, to provide services to prison inmates are state actors for purposes of section 1983 liability. *West v. Atkins*, 487 U.S. 42, 53–58 (1988). PrimeCare Medical concedes it has a contract with Chester County to provide medical, dental, and mental health services to inmates at the Chester County Prison. ECF No. 42, PrimeCare SUMF ¶ 3.

[141] *Monell*, 436 U.S. at 691.

[142] *Id*. at 690–91.

[143] ECF No. 2 at 8–9, ¶ A.1.

[144] *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

[145] We note our Court of Appeals in *Fagan v. City of Vineland* held "an underlying constitutional tort can still exist even if no individual [employee] violated the Constitution." 22 F.3d 1283, 1292 (3d Cir. 1994). But our Court of Appeals recently instructed it "carefully confined" *Fagan* to its facts where plaintiff asserted a substantive due process claim as a result of a police pursuit. *Johnson v. City of Phila.*, 975 F.3d 394, 403 n.13 (3d Cir. 2020) (quoting *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 n.5 (3d Cir. 2003)). Mr. Curdo did not assert a substantive due process claim.

[146] *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 761 (3d Cir. 2019).

[147] *Id.* (cleaned up).

[148] *Id.* (cleaned up).